**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NBL FLOORING, INC., on behalf of itself and all others similarly situated,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **CIVIL ACTION NO. 10-4398** |
| **TRUMBULL INSURANCE CO., *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION AND ORDER**

**RUFE, J.** **January 28, 2014**

NBL Flooring, Inc. has sued Trumbull Insurance Co. and its parent company, Hartford Financial Services Group ("HFSG"), alleging that the two companies improperly charged it for workers' compensation insurance for certain exempt independent contractors. NBL sues on its own behalf and on behalf of other Pennsylvania companies that purchased workers' compensation policies from either Defendant.[1] Before the Court is HFSG's motion for summary judgment. HFSG argues that NBL's breach of contract claims against it fail, as NBL has not put forth evidence which demonstrates that HFSG was a party to the insurance contracts entered into by NBL and Defendant Trumbull.[2] HFSG also argues that NBL's unjust enrichment

[1] The Court will address Plaintiff's Motion for Class Certification by separate opinion and order.
[2] Trumbull does not dispute that it is the insurer listed on the policy and is a proper party to this lawsuit. The only issue before the Court on this motion is whether Trumbull's parent company, HFSG, is also a proper party to this lawsuit.

claims fail because NBL has not put forth evidence that HFSG was enriched. For the reasons set forth below, HFSG's motion will be granted.

## I. Factual and Procedural Background[3]

In 2007 and 2008, NBL, a carpet installation contractor, purchased workers' compensation insurance policies issued by Defendant Trumbull. Trumbull is a wholly owned subsidiary of Defendant HFSG, a holding company which is not a licensed insurance company. While the policies clearly stated that Trumbull was the insurer, the term "The Hartford" is also used in the policies, their attachments, and related notices,[4] and the stag logo associated with Hartford insurance products also appears on the policy documents. The policies do not define The Hartford, which is a trade name used by HFSG, Trumbull, and other subsidiaries of HFSG.

NBL paid *estimated* premiums in advance for workers' compensation policies, because the final premium calculation depended on information, such as the number of employees during the year, which could not be assessed with precision in advance. The policies required NBL to submit to audits by Defendants after the policy period ended, so that accurate final premiums could then be determined.

In the Complaint, NBL alleged that Defendants breached their contractual obligations to NBL by including certain independent contractors when calculating the final premiums. NBL also alleged that Defendants breached their contractual obligation to conduct an audit in good faith. As a result, NBL alleges, Defendants improperly charged NBL thousands of dollars in additional premiums. In the alternative, NBL alleges unjust enrichment, in that Defendants have

---

[3] The facts set forth herein are taken from the parties Statement of Stipulated Material Facts, Doc. No. 89-1 and from the relevant insurance policies.

[4] For example, the issuing office is identified as The Hartford, a document entitled "Important Notice" states that The Hartford is the workers' compensation insurance carrier, and the Policy Adjustment Notice states that if a refund is owed to NBL, the check will be mailed by The Hartford.

benefitted by charging and collecting workers' compensation premiums in excess of amounts due and owing.[5]

HFSG previously asked the Court to find it was not a party to the contract and dismiss the breach of contract claims against it on the pleadings. The Court ruled that NBL was entitled to take discovery on the question of whether The Hartford referred to HFSG, or whether HFSG was otherwise a party to the contract, and noted that "[i]f appropriate, HFSG may renew its argument that it is not a party to the contract on a full factual record at a later point in the litigation."[6] Both Defendants moved to dismiss the unjust enrichment claims on the pleadings, but the Court reasoned that "it is possible that discovery will reveal that one or more of the Defendants has a relationship with NBL which is not entirely governed by the Policies," and did not dismiss that claim at the pleading stage. Now, HFSG has again asked the Court to dismiss these claims, upon its motion for summary judgment and a developed factual record.

## II. Standard of Review

A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[8] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9]

[5] NBL's complaint contained claims of breach of contract, fraud, and unjust enrichment against both Trumbull and HFSG. In resolving the parties Motion for Judgment on the Pleadings, the Court dismissed NBL's fraud claims against both defendants as barred by the gist of the action doctrine.
[6] August 1, 2012 Opinion, Doc. No. 49 at 4.
[7] Fed. R. Civ. P. 56(a).
[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[9] *Id.*

## III. Discussion

Under Pennsylvania law, a defendant is liable for breach of contract only if it is a party to that contract.[10] HFSG argues the relevant insurance policies were issued by Trumbull, Trumbull is the company identified as the insurer on the policy documents, and Trumbull acted as the insurer. Therefore, as a non-party to the contracts, HFSG cannot be liable for breach of contract. HFSG notes that although Trumbull is a subsidiary of HFSG, HFSG itself is not the insurer and a parent corporation is generally not liable for the acts or omissions of a subsidiary. Moreover, HFSG argues, it is merely a holding company, not a licensed insurance company, and does not issue *any* insurance policies. HFSG also argues that it is entitled to summary judgment on the unjust enrichment claims, as there is no evidence that NBL conferred any benefit on HFSG, or that HFSG accepted or retained benefits such that it would be inequitable for HFSG to retain the benefit without payment to NBL.

### A. Breach of Contract Claims

In analyzing whether HFSG is a party to NBL's relevant insurance policies, the Court must consider two factors: "1) the extent to which the company was identified as the insurer on the policy documents; and 2) the extent to which the company acted as the insurer" notwithstanding corporate structure.[11]

#### a. *Did the Policies Identify HFSG as an Insurer?*

HFSG argues that the relevant insurance policies plainly and unambiguously indicate that the insurer is Trumball, and notes that HFSG is not an insurance company and therefore is not and cannot be a party to those policies. HFSG also argues that The Hartford and HFSG are not

---

[10] *Lockhart v. Fed. Ins. Co.*, No. 96-5330, 1998 WL 151019, at *3 (E.D. Pa. Mar. 30, 1998) (citing *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. Ct. 1991), *Viso v. Werner*, 369 A.2d 1185 (Pa. 1977)).

[11] *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 498 (Pa. Super. Ct. 2004). HFSG argues that the second factor applies only to cases involving insurance bad faith claims, and not to cases which allege only breach of contract, but cites no case law in support of this principle.

the same entity. In fact, HFSG argues, The Hartford is not an entity at all. It is simply a trade name used by Trumbull and other HFSG subsidiaries; it is not an insurance company and cannot be a party to the policies. HFSG argues that NBL's insurance policies do not associate the trade name The Hartford or the stag logo with any entity other than Trumbull. Nothing in the policies suggests that The Hartford refers to HFSG, and Defendant notes that the only mention of HFSG in the policies is in the privacy notice included with each insurance policy, which is titled "The Privacy Policy and Practices of The Hartford Financial Services Group, Inc. and its Affiliates."

In its opposition, NBL argues that HFSG and The Hartford are the same entity, and that its dealings with the companies demonstrate that The Hartford is a party to the relevant insurance policies. NBL asserts that when it applied for insurance coverage, it reached out to Frank Breuninger, who identified himself as an insurance agent for The Hartford, and completed applications which indicated that the carrier was The Hartford and the company was the "Hartford Insurance Group," with no mention of Trumbull.[12] NBL notes that the name The Hartford and the stag logo appear on the cover of the Trumbull insurance policies and on other policy notices and correspondence, but the term The Hartford is not defined in the policies. NBL also points out that David Zwiener, who signed both NBL policies, is both the President and Chairman of the Board of Trumbull, and an Executive Vice President of HFSG; Brian Becker, who signed the 2007 policy, was Corporate Secretary for both Trumbull and HFSG; and Richard Costello, who signed the 2008 policy, was Corporate Secretary for both Trumbull and HFSG in 2008.[13] All premium payments were made payable to The Hartford, not to Trumbull. The policy does name Trumbull as "the insurer" but certain notices state that The Hartford is the

[12] See Doc. 99-1 at ¶¶30-34.
[13] The parties have stipulated that these individuals served both HFSG and Trumbull. *See* Doc. No. 89-1 at ¶12-14.

insurance carrier.  Finally, the term The Hartford and the stag logo appear on the relevant insurance policies, as well as on notices and correspondence regarding those policies.

NBL argues that the policies are ambiguous with regard to the identity of the insurer, because of the undefined term The Hartford, and the Court should construe the term The Hartford to mean HFSG as a matter of law.  In interpreting ambiguous contract terms, the Court may look to intrinsic and extrinsic evidence, and must strictly construe ambiguous terms against the insurer.[14]

The Court does not find that the use of the term The Hartford (or the stag logo) creates ambiguity with regard to the identity of the insurer.  The policies clearly state that Trumbull is the insurer, and the use of the term The Hartford and the stag logo simply indicate that Trumbull is associated with The Hartford brand.  Moreover, even if the Court found the term created ambiguity as to the identity of the insurer, and examined intrinsic and extrinsic evidence, the Court cannot construe the term The Hartford to mean HFSG as a matter of law, as NBL requests.  NBL points to no language in the contract or any extrinsic evidence from which the Court can find that The Hartford and HFSG are the same entity.  In fact, the extrinsic evidence Plaintiff points to demonstrates only that HFSG and The Hartford are related in some way, and not that they are the same entity.   Therefore, interpreting The Hartford to mean HFSG would not *correct* an ambiguity—it would simply assign to it NBL's preferred meaning.  The Court cannot find, as a matter of law, that The Hartford means HFSG, or that HFSG is a party to the policies.

NBL next argues that, if the Court cannot find that the use of the term The Hartford renders HFSG a party to the contract as a matter of law, then the Court should deny the motion for summary judgment because there is a genuine issue of material fact as to whether HFSG is a

---

[14] *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005).

party to its insurance contracts. Again, the Court notes that the policies plainly identify Trumbull as the insurer.[15] HFSG is not named or referred to in the policies, much less identified as the insurer.[16] Moreover, as discussed above, Plaintiff has pointed to no evidence from which the Court can find that the undefined term The Hartford should be construed to mean HFSG and not Trumbull, and NBL has put forth no competent evidence establishing that The Hartford and HFSG are the same entity. Accordingly, the Court finds no genuine issue of material fact as to whether the policies identify HFSG as an insurer.

*b. Did HFSG Act As an Insurer?*

The Court then must ask whether there is a genuine issue of fact as to whether HFSG acted as an insurer in this case. HFSG argues that is not an insurance company, but only a holding company, and therefore it *could not* be a party to the insurance policies or act as an insurer of the policies. In response, NBL points to a 2012 Form 10K, in which HFSG stated that it, together with its subsidiaries, was an insurance and financial services company,[17] as well as other evidence NBL believes creates an issue of fact as to whether HFSG is an insurance company. The Court need not resolve this issue, however, because even if the Court finds there is a genuine issue of fact as to whether HFSG is an insurance company, the Court finds there is no issue of material fact as to whether HFSG acted as an insurer *of NBL* on the relevant policies. The evidence regarding which entity issued policies, collected premiums, and assumed risks and obligations[18] does not suggest that HFSG issued the relevant policies[19] or received the premium

[15] This distinguishes it from *Brown*, to which NBL cites extensively, where the court found that "there is no clear statement in the policy and supporting documentation as to the identity of the insurer." *Brown*, 860 A.2d at 498.

[16] The only mention of HFSG is found in the privacy policy included with each insurance policy, but that document is titled "The Privacy Policy and Practices of The Hartford Financial Services Group, Inc. *and its Affiliates.*" (emphasis added). As it is undisputed that Trumbull is an affiliate of HFSG, this document does not support Plaintiff's argument that HFSG was a party to the contract.

[17] See Doc. No. 89-1, ¶19.

[18] *Brand v. AXA Equitable Life Ins. Co.*, No. 08-2859, 2008 WL 4279863, at *4 (E.D. Pa. Sept. 16, 2008).

payments for those policies. With regard to the conduct at issue, the allegedly improperly conducted audits, NBL argues that Trumbull has no employees, and all auditing of customers, and training of auditors, is delegated to and performed by employees of the Hartford Fire Insurance Company, another wholly owned subsidiary of HFSG, which is not a party to this lawsuit.[20] Assuming this is true, it does not create an issue of fact as to whether *HFSG* acted as an insurer of NBL.

While it is clear that Trumbull, HFSG, and Hartford Fire Insurance Co. are related entities, demonstrating a relationship is not sufficient to make HFSG liable for breaches of contracts entered into by its subsidiaries.[21] As the evidence fails to create an issue of fact as to whether HFSG was a named or *de facto* insurer, NBL's breach of contract claims against HFSG must be dismissed.

B. <u>The Unjust Enrichment Claim</u>

NBL pled an alternative unjust enrichment claim, which it wished to assert against HFSG should the Court find that HFSG was not a party to the contract. To prove unjust enrichment, a plaintiff must prove: 1) benefit conferred on defendant by plaintiff; 2) appreciation of the benefit by defendant; 3) acceptance and retention of benefits under such circumstance that it would be inequitable for defendant to retain the benefit without payment of value.[22]

Plaintiff asserts that it was required to pay premiums to Trumbull for individuals who were independent contractors and not employees, and it did so in 2007 (but not 2008), and HFSG then received higher dividends as the sole shareholder of Trumbull. However, NBL did not

---

[19] NBL does not dispute the assertion that HFSG is not a licensed insurer and cannot issue any insurance policies in Pennsylvania.

[20] These assertions are undisputed. See Doc. No. 89-1, ¶¶15-17.

[21] NBL has not made an argument, nor set forth facts which would support an argument, that the corporate veil should be pierced in this case. *See Zubik v. Zubik*, 384 F.2d 267, 272-73 (3d Cir. 1967). Thus, the parent company cannot be liable for a breach by its subsidiary unless it is a party to the contract. *See George A. Davis, Inc. v. Camp Trails Co.*, 447 F.Supp. 1304, 1307 (E.D. Pa. 1978)

[22] *Schenck v. K.E. David, LTD*, 666 A.2d 327, 328-29 (Pa. Super. 1995).

directly confer a benefit on HFSG, and in any event, even if HFSG did obtain higher dividends as a result it would not be inequitable for HFSG to retain those dividends because, if liability is established, NBL can fully recover from Trumbull, the alleged wrongdoer.[23] Accordingly, HFSG's motion for summary judgment will be granted as to this claim as well.

C. NBL's Request for Additional Discovery

NBL argues that, if the Court cannot find that HFSG is a party to the contract, nor that there is a genuine issue of material fact as to whether HFSG is a party to the contract, on the present record, it should permit additional discovery on this issue. NBL argues that it has concentrated its efforts on class certification discovery and therefore has not completed discovery on the issue of HFSG's relationship to Trumbull and The Hartford. However, NBL knew, from the motion for judgment on the pleadings and the Court's ruling thereon, that HFSG would likely assert that it is not a proper party to this lawsuit, and NBL's own proposed class definition ("All businesses in Pennsylvania who contracted to purchase workers' compensation insurance from either Defendant . . .") requires the Court to determine whether HFSG is a proper defendant prior to addressing the request for class certification. Thus, the relationship between Trumbull, The Hartford, and HFSG could and should have been thoroughly explored by NBL during discovery on class certification issues. Accordingly, the Court will not permit additional time for discovery on these issues.

## IV. Conclusion

For the reasons set forth herein, Defendant HFSG's Motion for Summary Judgment is granted and the claims against it are dismissed. An appropriate order follows.

---

[23] *See, e.g.*, *Bouriez v. Carnegie Mellon University*, 02-2104, 2005 WL 3006831, *9-10 (W.D. Pa. Nov. 9, 2005).