**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NBL FLOORING, INC., on behalf of itself and all others similarly situated,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **NO. 10-4398** |
| | : | |
| **TRUMBULL INSURANCE CO.,** *et al.,* | : | |
| | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

**RUFE, J.**                                                                **February 12, 2014**

NBL Flooring, Inc. has sued Trumbull Insurance Co.,[1] alleging that Trumbull improperly charged it for workers' compensation insurance in breach of their contract for insurance. NBL sues on its own behalf and on behalf of other Pennsylvania companies that purchased workers' compensation policies from Trumbull and has moved the Court to certify a class. Trumbull opposes the certification of a class. For the reasons set forth herein, the motion for class certification will be denied.

**I.    BACKGROUND**

NBL is a carpet sales and installation company. Although NBL has a small number of management and sales employees, it alleges that it does not employ carpet installers. Instead, NBL uses independent contractors for all carpet installation work.

NBL alleges that it purchased workers' compensation insurance policies issued by Defendant Trumbull Insurance Co. ("Trumbull") in 2007 and 2008. The policies described the process for calculating the workers' compensation insurance premiums due, which involved

---

[1] NBL also sued Trumbull's parent company, Hartford Financial Services Group. The claims against Hartford Financial Services Group have been dismissed by separate memorandum opinion and order.

multiplying a rate by a "premium basis." The premium basis is calculated based on payroll and other remuneration paid or payable for the services of the companies officers and employees engaged in covered work and "all other persons engaged in work that could make [Trumbull] liable under" the policy, including employees of independent contractors unless NBL could provide "proof that the employers of these persons lawfully secured their workers compensation obligations."[2]   At the time the policies were in effect, under Pennsylvania law, an independent contractor who did not have employees but worked alone was ineligible to carry his own workers' compensation insurance, and NBL was not required to provide coverage for that individual.  However, when an independent contractor utilized one or more employees for a project, rather than working alone, that contractor's employees were required to be covered by a workers' compensation policy.[3]   The coverage could be provided by the independent contractor for whom the employees worked, but if it was not, NBL's insurer would necessarily provide workers' compensation coverage for the contractor's employees while they performed work for NBL.[4] Therefore, Trumbull included remuneration paid to the contractor's employees in calculating NBL's premium unless NBL demonstrated that they had some other source of coverage.

Each contract year, Plaintiff paid estimated premiums in advance for the policies, as "[t]he precise amount of the premium could not be determined until after the end of the year, because the calculation depended on the number of employees and other covered individuals during the year."[5]   The policies required Plaintiff to submit to audits by Trumbull after the

---

[2] The policies advised that "in the absence of other insurance, most state laws hold a contractor responsible for injuries to employee[s] of subcontractors.  At the time of the audit Certificates of Insurance must be available for subcontractors with employees, in order to avoid payment of premiums."
[3] 77 Pa. Stat. §461.
[4] *Id.*
[5] Compl. ¶28.

policy period ended, so that accurate final premiums could be calculated.  One important objective of the audits was to assess whether a purported independent contractor without employees was, in fact, an employee of NBL and not an independent contractor at all.[6]  If an individual was determined to be an employee and not an independent contractor, remunerations paid to that individual were also included in the premium basis.  In addition, during an audit Trumbull would examine the likelihood that an independent contractor reported to have performed work alone had actually used one or more employees.  If Trumbull believed that a contractor had utilized employees, and NBL could not establish some other source of workers' compensation insurance coverage for those employees, Trumbull included remuneration it found was paid to the contractor's employees in calculating NBL's premium.  NBL's complaint alleges that Defendants breached their contractual obligations to NBL by failing to conduct its audits in good faith, and thus Trumbull improperly charged NBL thousands of dollars in additional premiums in breach of their contract.

Plaintiff also asserts these claims on behalf of a class of other companies insured by Trumbull.  Plaintiff alleges that there are approximately 279 companies in Pennsylvania that were insured by Trumbull and that were audited and then charged premiums for individuals the insured company claimed were independent contractors without employees.  Plaintiff argues that Trumbull used the same problematic audit criteria to determine whether a worker was an independent contractor or an employee when auditing all of its customers, and therefore liability can be determined on a class-wide basis.

---

[6] The policies advised insureds that "Independent Contractors without employees, whose duties closely resemble those of an employee, will be considered your employee with the appropriate premium charged.  The actual working relationship between you and the Independent Contractor is examined.  Items such as, but not limited to: whether the work performed is an integral part of your operation, whether you have the right to control the details of the work, the method of payment, who supplied the materials used, does the person regularly work for others, whose regulatory authority did the person operate under, whether the person is involved in a separate and distinct business offering the same services to the public."

II.   DISCUSSION

Plaintiff's motion asks the Court to certify the following class:

> All businesses in Pennsylvania who contracted to purchase workers'
> compensation insurance from either Defendant (including policies sold by The
> Hartford through any of its wholly owned subsidiaries) in the period September
> 1, 2006 through the present ("The Class Period"), were subject to improper
> audits inconsistent with Pennsylvania Law and Defendant's contractual
> obligations and were charged for coverage of Independent Contractors.

However, because the Court has dismissed NBL's claims against Defendant Hartford Financial

Services Group by Memorandum Opinion and Order dated January 28, 2014, this opinion will

consider an appropriately modified proposed class definition:

> All businesses in Pennsylvania who contracted to purchase workers'
> compensation insurance from Trumbull Insurance Company in the period
> September 1, 2006 through the present ("The Class Period"), and were subject
> to improper audits inconsistent with Pennsylvania Law and Defendant's
> contractual obligations, and were charged for coverage of Independent
> Contractors.

### A.    The Rule 23 Standard

For a class to be certified, Plaintiff must satisfy the four requirements of Rule 23(a):  1)

numerosity of class such that joinder of all members is impracticable; 2) commonality of

questions of law or fact; 3) typicality of the claims or defenses of the representative party; and

4) adequacy of representation of the interests of the class by the lead plaintiff.  Plaintiff must

also satisfy at least one requirement of Rule 23(b).  Here, Plaintiff argues that it may proceed

under Rule 23(b)(1)(A), as a Court ruling would have the effect of injunctive relief, guiding

Defendant's conduct in the future,[7] and proceeding with individual claims would create a risk of

"inconsistent or varying adjudications with respect to individual class members that would

---

[7] The parties agree that plaintiffs may not proceed under Rule 23(b)(1)(A) where only monetary damages are sought.
*See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001).

establish incompatible standards of conduct for the party opposing the class."[8]  Plaintiff also

argues that it satisfies Rule 23(b)(3), as common questions of law and fact predominate over

questions affecting only individual class members and a class action is superior to other

available methods for adjudicating the controversy.

Rule 23 is not a mere pleading requirement.  The Court cannot certify a class unless the

party seeking certification can prove, by a preponderance of evidence, that each of the

requirements of Rule 23 is satisfied.[9]

### B.    The Rule 23(a) Requirements

1.    *Numerosity*

The Court first asks whether the class is so numerous that joinder of all members is

impracticable. Generally, courts find sufficient numerosity exists if the named plaintiff

demonstrates that the potential number of plaintiffs is above 40.[10]   Plaintiff asserts that there are

approximately 279 companies in Pennsylvania insured by Trumbull, audited, and then charged

premiums for individuals the insured company had claimed were independent contractors without

employees.  Each of these companies is a potential class member.  As the Court need not decide the

merits of the underlying claims before determining whether numerosity is satisfied, the Court finds

that NBL has adequately established numerosity.

2.    *Commonality*

Second, the Court examines whether questions of law and fact are common to the proposed

class members.  The "common contention . . . must be of such a nature that it is capable of

classwide resolution—which means that the determination of its truth or falsity will resolve an issue

---

[8] Fed. R. Civ. P. 23(b)(1)(A).
[9] *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012).
[10] *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

that is central to the validity of each one of the claims in one stroke."[11]   To the extent that Plaintiff

seeks class certification under Rule 23(b)(3), the issue of commonality is subsumed by Rule

23(b)(3)'s more demanding predominance requirement.[12]   However, as Plaintiff also seeks class

certification under Rule 23(b)(1), the Court will briefly address commonality here as well.

The claims of the proposed class members will involve the resolution of a common

question (i.e. whether Trumbull correctly assessed the employment status of purported independent

contractors without employees).   However, as the Supreme Court noted in *Dukes*, to establish

commonality, a group of plaintiffs seeking class certification must also demonstrate that "their

claims can be productively litigated at once" and that class members are similar enough that

common questions are likely to generate common answers.[13]   Here, NBL has not put forth

"significant proof,"[14] as opposed to allegations, that Trumbull made systematic errors or exercised

systematic biases within or across audits.   While some of Trumbull's determinations may have been

erroneous, the Court is not convinced that finding Trumbull is liable to one class member for breach

of contract would resolve the claims of any other class members.   If each member of the proposed

class must put forth independent evidence to establish that Trumbull made errors in conducting its

audits, individualized issues of fact will quickly overwhelm common factual and legal issues.

3.     *Typicality*

The typicality inquiry requires the Court to ask whether the claims and defenses of the

named Plaintiff are representative of claims and defenses of the class.   It appears that the legal

theory will be essentially the same for all class members, as will Trumbull's defenses.   Therefore,

the Court finds that NBL has satisfied the typicality requirement.

---

[11] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).
[12] *Danvers Motor Co, Inc. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) (internal citation omitted).
[13] *Dukes*, 1331 S. Ct. at 2551.
[14] *Id.* at 2553.

4.    *Adequacy of Representation*

Finally, the Court must be satisfied that the Plaintiff can fairly and accurately protect the interests of the class.  The Court sees no conflicts of interest between NBL and other class members at the liability stage of this litigation, and counsel appear to be well-qualified, having competently briefed five motions to date in this case, and having a firm resume which indicates ample relevant experience.  However, NBL believes injunctive relief or relief having an injunctive effect may be warranted, but it does not have standing to pursue injunctive relief, as it is no longer insured by Trumbull. If the other class members wished to seek injunctive relief, NBL would be a poor representative for this purpose.

**C.    Rule 23(b)(1)(A)**

Plaintiffs may not proceed under 23(b)(1)(A) where only monetary damages are sought.[15] The complaint in this case seeks only monetary damages.  Plaintiff argues that although it is not explicitly seeking injunctive relief, a ruling from the Court will have an injunctive effect, in that it will guide Defendants' conduct in the future.  Therefore, Plaintiff argues, Rule 23(b)(1)(A) weighs in favor of proceeding as a class, to ensure that Defendants will not need to address conflicting court rulings when deciding how to apply Pennsylvania law to determine which workers are independent contractors during the audit process.  However, as NBL's Complaint does not seek injunctive relief, and NBL lacks standing to assert such a claim, the Court will not certify a class pursuant to Rule 23(b)(1)(A).[16]

**D**.    **Rule 23(b)(3)**

To certify a class pursuant to Rule 23(b)(3), the Court must examine whether common questions of law and fact predominate over questions affecting only individual class members, and

---

[15] *Zinser*, 253 F.3d at 1193.
[16] *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (to seek injunctive relief a plaintiff must show threat of injury in fact that is imminent, concrete, and particularized).

whether a class action is superior to other available methods for adjudicating the controversy.  In deciding whether a class action is a superior method, the Court must consider: class members' interests in pursuing separate actions rather than a class action; the extent of litigation over the controversy already begun by class members; the desirability of concentrating litigation in one forum; and the likely difficulty of managing a class action.[17]

The predominance criterion in Rule 23(b)(3) is even more demanding than the commonality requirement in Rule 23(a).[18]  The Court must take a "close look" at whether common questions predominate over individual ones.[19]  NBL's Complaint asserted that Trumbull engaged in a course of conduct impacting many of its insureds—i.e., that it improperly charged a premium for any individual who performed work for a proposed class member unless the insured could demonstrate that the worker had alternative workers' compensation coverage, without regard to whether that worker was an independent contractor without employees and thus exempt from coverage under state law.

NBL argues that Trumbull improperly applied the test for determining whether a worker is an independent contractor or is, in fact, an employee.[20]  The parties agree that, under Pennsylvania law, an employer's right to control the work to be done and the manner in which it is performed is a key to determining whether a worker or entity is an employee or an independent contractor.[21]  The factors to consider include control over the work, responsibility for the results, the right to terminate the employment, the terms of the agreement between the parties, whether the work is part of the regular business of the employer, whether the work

---

[17] Fed. R. Civ. P. 23(b)(3).

[18] *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).

[19] *Id.* (internal quotation marks and citations omitted).

[20] While most of the argument focuses upon state law, the policies at issue also include relevant language.

[21] *Universal Am-Can, Ltd. v. W.C.A.B. (Minteer),* 762 A.2d 328, 333 (Pa. 2000); *Hammermill Paper Co. v. Rust Eng'g. Co.*, 243 A.2d 389, 392 (Pa. 1968).

performed is a distinct occupation from the primary work of the employer, which party supplies

tools and materials, and the method of payment (hourly or by the job).[22]  NBL argues that

Trumbull only examined the nature of the work performed by the purported independent

contractor and found he was an employee of NBL when the work performed was central to the

regular business of NBL (e.g., carpet installation, but not accounting work).  NBL argued that

Trumbull failed to examine any other relevant factors before determining whether a worker was

an employee or an independent contractor, including the most essential factor in determining

whether a worker is an employee or an independent contractor under Pennsylvania law:

Trumbull's right to control the work to be done by the contractors and the manner in which it

was performed.

However, Trumbull points to contrary evidence  which indicates that Trumbull conducted an

individualized and subjective field audit of NBL, assessing the actual working relationship between

each purported independent contractor and the insured.  The evidence suggests that Trumbull's

audit of NBL involved reviewing business records and interviewing NBL employees about NBL's

relationship to the contractors, as well as assessing whether a contractor was likely to have worked

alone rather than with a crew, before determining which of its workers required coverage under

NBL's workers' compensation policies.[23]  For example, the evidence shows that Trumbull

examined policy holders' direction and control of the purported independent contractors, their right

to terminate the contractors' employment, the nature of the work performed, whether the work was

part of the regular business of the employer, the method and amount of payment, [24] and other

---

[22] *Hammermill*, 243 A.2d. at 392.

[23] As only independent contractors without employees (i.e. individuals that performed a carpet installation jobs for NBL alone) are exempt from workers' compensation coverage, it was important for Trumbull to determine whether any of the purported independent contractors had employees who required coverage under Trumbull's workers' compensation policy.

[24] Dempsey Dep. ¶ 79.

factors, such as the size and nature of the project.[25]   Because Pennsylvania law does require

weighing of multiple subjective factors, if the Court certified a class, the Court would be faced with

individualized inquiries into the adequacy of the audit process and the correctness of the outcome

for each audit performed on a proposed class member during the class period.  Without such

intensive fact finding, the Court would be unable to determine whether each potential class member

received an improper audit or was otherwise improperly charged premiums for its purported

independent contractors.  This fact-intensive undertaking, which would be necessary both to

determine which companies insured by NBL are class members and to assess liability, would

predominate over any common issues of law and fact.

      Moreover, as NBL acknowledges, each class member would need to provide individualized

proof of damages caused by Trumbull's audits. That is, each class member would need to show that

each purported independent contractor on its payroll was in fact an independent contractor who was

not required to be covered under the company's workers' compensation policy in order to establish

injury and to establish a measure of damages.  Where damages are not capable of measurement on a

class-wide basis, individual damage calculations may overwhelm questions common to the class; in

such cases, plaintiffs cannot establish Rule 23(b)(3) predominance, and class certification must be

denied.[26]   Here, the Court would need to engage in individual calculations, and analyzing whether

each alleged independent contractor is exempt from workers' compensation coverage, over a range

of types of businesses, would require the Court to review the business records not just of the class

plaintiff but also of each alleged independent contractor (as the Court will need to determine

---

[25] As an example, Trumbull employee David Soja testified that if a subcontractor is paid more than $200,000 for labor only, he is likely to have brought additional people in to work with him.  Soja Dep. ¶ 89.
[26] *Comcast,* 133 S. Ct. at 1433.

whether the contractor is a sole practitioner or has employees who were used to perform work for class members).  This exercise could quickly overwhelm the issues common to the class.[27]

NBL argues that as nominal damages are available in breach of contract cases, to demonstrate predominance, it need only show, on a class-wide basis, that Trumbull breached a contract that was common to the class members.   This argument assumes that the class members can prove a breach of the particular contract provision at issue—requiring Trumbull to conduct a proper audit—on a class-wide basis without individualized proof.  As discussed above, the evidence suggests that it cannot.

Plaintiff acknowledges that actual damages are not capable of measurement on a class-wide basis, and suggests that this problem could be addressed by proceeding as follows:  1) first, determine liability on a class-wide basis; 2) then, determine damages for named Plaintiff NBL; 3) finally, send the issue of damages owed to other class members to an independent auditor or special master.[28]  This is not a realistic proposal, as the Court cannot determine liability on a class-wide basis in this case, as discussed above.  Plaintiff's proposal underscores the Herculean task of calculating damages for the proposed class; because the analysis required to determine which workers were required to have workers' compensation insurance is a subjective, fact-intensive one under Pennsylvania law, damages are not capable of calculation on a classwide basis by use of a simple formula.  Rather, intensive fact finding would need to precede a finding on damages for each class member.  Accordingly, the Court cannot find that common questions of law and fact predominate over questions affecting only individual class members.  Moreover, this proposal

---

[27] Plaintiff cites *Martins v. 3PD, Inc.,* No. 11-11313, 2013 WL 1320454, *8, n. 3 (D. Mass. Mar. 28, 2013), which actually makes a point contrary to Plaintiff's argument:  ". . . while in other cases, questions of damage calculation are so complex or implicate so many potential class members, that they present a Herculean task and overwhelm liability issues, defeating predominance under Rule 23(b)(3)."

[28] The Court notes that even if it did appoint an independent auditor or special master, any party which disagreed with the findings of that individual would have the right to appeal to this Court, which would then be required to review the matter *de novo.*

raises concerns about NBL's ability to adequately represent the class for the duration of the proceedings.

Finally, Plaintiff claims that if this case is not classified as a class action suit, class members will not be able to recoup their damages, as individual damages are typically too small to justify bringing individual suits.  However, NBL claims it is owed approximately one thousand dollars for each contract year, and these are state law breach of contract claims which can be adjudicated inexpensively in a state-court forum for small claims.[29]  Moreover, under NBL's own proposed trial plan, each potential class member will be responsible for litigating its own claims for damages after the Court determines class-wide liability and NBL's damages.  Accordingly, this factor does not weigh in favor of certifying a class.

## IV.   CONCLUSION

The Court finds that Plaintiff has failed to establish that class certification is appropriate in this case.  The Court particularly notes that Plaintiff has failed to prove the requirements of commonality and predominance.  While there are questions common to the class, the Court finds that individual issues will predominate in the assessment of both liability and damages.  Accordingly, the Motion for Class Certification is denied.  An appropriate order follows.

---

[29] In addition, class members could address any prospective concerns by choosing another carrier if Trumbull refuses to conduct its audits in the manner required by Pennsylvania law.